JOHN J. LANDERS, Appellant, *v.* THE FRANK STREET METH-
ODIST EPISCOPAL CHURCH, of Rochester, Respondent.

Where the exercise of corporate acts is vested in a select body, an act done
by the persons composing that body, in a meeting of all the corporators,
is not a valid corporate act.

(Argued March 22, 1889; decided May 3, 1889.)

APPEAL from judgment of the General Term of the Supreme
Court in the fifth judicial department, entered upon an order
made April 17, 1886, which affirmed a judgment in favor of
defendant, entered upon an order nonsuiting plaintiff on trial.

This action was brought by plaintiff, a minister of the Meth-

odist Episcopal Church, to recover an alleged balance of salary due him as defendant's pastor.

The case is reported on a former appeal. (97 N. Y. 119.)

The court here held that the evidence was substantially the same on the second trial as on the first; that plaintiff failed to show that his salary was fixed as prescribed by the act for the incorporation of religious societies (§ 48, chap. 60, Laws of 1813); it appeared it was fixed by the quarterly confer-. ence, whose action was not ratified or adopted by a majority of the qualified voters, and by a majority of defendant's trustees, as required by the act, and, therefore, that defendant was properly nonsuited.

It appeared that a meeting of the church society was held in September, 1873. The following is an extract from the opinion in reference to that meeting, and the effect of the action then taken :

"Assuming that the meeting of September, 1873, was held pursuant to a regular notice, what was then done by the qualified voters toward fixing the salary of the plaintiff? No organization was effected, no motion made, no vote taken, no record of the meeting kept. It seems to have been a social rather than a business meeting, for refreshments were first served. The plaintiff then made some pleasant remarks not of a business character, and finally said that the amount to be provided for was $2,000 for the pastor's salary. He then continued, 'I wish to know whether you are satisfied with that, and also whether it shall be paid to me month by month. I can only repeat that it is for you to act in the matter and do what is best for your own interest. If you do not we shall part. If there is a single person present who is dissatisfied with this, I wish you to say so fully and frankly.' Several speeches were made approving the plaintiff's proposal, and at last one gentleman said : 'It is clear that we are of one mind in this matter, and to save time I propose 'that a subscription be prepared and circulated among those present and that every one pledge himself to what he is willing to give monthly toward the pastor's salary.'

"A subscription paper was then prepared with the following

heading: 'We, whose names are hereto signed, promise to pay monthly the sums set opposite our names towards payment of the pastor's salary,' and various persons, including all of the trustees but one, signed it and added the sum that they were willing to pay. The trustees signed as individuals only, each binding himself personally to pay a certain amount. No other action was taken at the meeting and no resolution or motion was passed.

"No vote, formal or informal, was called for or taken, and nothing was determined by a majority of voices. The request of the plaintiff that if 'a single person' was dissatisfied he should say so 'fully and frankly,' was simply an invitation to such person to express his views in the form of a speech. There may have been many who were dissatisfied who did not wish to say so in that way. Those who spoke, perhaps a dozen in number, were in favor of the plaintiff's proposition, but what was the opinion of the hundred who did not speak? What assurance is there that if a vote had been taken the proposition would not have been defeated?

"We do not think that any action was taken by the qualified voters at this meeting. All that was done was by the voluntary action of individuals. The judgment or will of a majority of the qualified voters, as an aggregate body, was not ascertained. No question was put to them.

"The proper way to ascertain the wishes of a majority of a deliberative assembly is by a vote of some kind. It cannot be assumed, from what was said by the plaintiff and others, that those who said nothing assented to his proposal. Silence in such a body under such circumstances does not give consent.

"The action of those who were trustees was not official, but personal in its character. Where the exercise of corporate acts is vested in a select body, an act done by the persons composing that body, in a meeting of all the corporators, is not a valid corporate act. (*Cammeyer* v. *United German Luthern Churches*, 2 Sandf. Ch. 208 ; *Constant* v. *Rector, etc., of St. Alban's Church*, 4 Daly, 305.)

"At the meeting held in December, 1873, action was taken upon the resignation of the plaintiff, but nothing was done in

relation to his salary.    There was no ratification by the trustees, because there was nothing to ratify and no attempt was made to ratify any supposed action by the qualified voters. The trustees do not appear to have made any payment to the plaintiff during either year.    The ecclesiastical officers seem to have taken entire charge of that subject.

" On the first appeal to this court it was held that as the plaintiff officiated upon the appointment of the bishop, and his salary was fixed by the quarterly conference, and was to be raised by the stewards, all ecclesiastical authorities, the fact that the defendant received his services raised no implication of any promise to pay.

" As the facts presented upon the two appeals, although differing somewhat in details, are substantially the same, due effect can be given to the decision of the former appeal only by an affirmance of the judgment."

*John S. Lambert* for appellant.

*Edward Webster* for respondent.

VANN, J., reads for affirmance.
All concur, except BRADLEY and HAIGHT, JJ., not sitting.
Judgment affirmed.